IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ROBERT PARKS, | * | |
| Petitioner, | * | |
| v. | * | Civ. No. DLB-23-948 |
| WARDEN, | * | |
| Respondent. | * | |

**MEMORANDUM OPINION**

Robert Parks filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. ECF 6. In response, the respondent filed an answer, asserting Parks's ineffective assistance of post-conviction counsel claim is not cognizable on federal habeas review and that Parks's other claims must be dismissed as untimely. ECF 9; *see* ECF 10 (exhibits). Parks filed a response. ECF 13, 14. No hearing is necessary. *See* Rule 8(a), *Rules Governing § 2254 Cases in the U.S. Dist. Cts.*; Loc. R. 105.6 (D. Md. 2021); *see also Fisher v. Lee*, 215 F.3d 438, 455 (4th Cir. 2000) (petitioner not entitled to a hearing under 28 U.S.C. § 2254(e)(2)). For the following reasons, the petition is dismissed, and a certificate of appealability shall not issue.

I.    Background

On February 13, 2018, Parks was indicted in the Circuit Court for Harford County, Maryland on charges of second-degree rape and second-degree assault. ECF 10-1, at 6, 24. Parks represented himself before and at trial. ECF 10-3, at 2–6, 8; ECF 10-5, at 3.

The underlying facts are as follows:

[Parks] attended a surprise birthday party held at a brewery which was followed by an after-party at the home of the person who arranged the birthday party. Alcohol was consumed during both functions. At some point, the victim, who also attended the birthday party and the after-party, rather than drive home, went to bed in the guest room and fell asleep. She testified that she woke up confused about where

> she was and what was going on and then realized that [Parks] was engaging in vaginal intercourse with her. She asked him to stop, and he did not. [Parks] admitted that he was passed out drunk in the bed with the victim, but denied having intercourse with her.

ECF 10-1, at 123 (Appellate Court of Maryland opinion).

Before his jury trial, Parks filed a request for a subpoena, directed to Anne Michelle Keesee, the party host, seeking a "complete list of all male attendees to the 40th Birthday Party [she] threw for [her] husband on October 22, 2017." ECF 10-1, at 26 (emphases omitted). He requested the names and contact information of each male attendee "be provided to the State for them to finally do a thorough investigation." *Id*. The court denied the request by marginal order. *Id*.

During trial, Parks tried to cross-examine Keesee by referring to her October 22, 2017 police interview, which took place at the hospital where the victim was being examined. ECF 10-8, at 15. During that interview, Keesee told the police that after discovering the assault, her husband texted another party attendee, Joe Glackin, and her husband and Glackin argued over the phone. ECF 10-1, at 33. The prosecutor objected to Parks's request that Keesee review her first statement, and the court asked Parks to explain the relevance of the interview. ECF 10-8, at 17–19. Parks offered that it was relevant because "immediately upon [Keesee's] husband finding out that something may or may not have happened, his first response was to bring in [sic] and contact another male." *Id*. at 19. The court noted Parks's effort to "impeach [Keesee] based on her prior statement to the police about information which had to do with her husband's conduct and conversation with a person named Joe Glackin," but it nevertheless sustained the objection because Parks had not laid a proper foundation and was trying to introduce hearsay. *Id*. at 20–21.

During trial, Parks marked Keesee's October 25, 2017 police interview for identification. ECF 10-8, at 21–22. In that interview, Keesee explained that after learning of the assault, she and

2

her husband discussed which male party guests had been "out of [their] sight" and postulated about who had the opportunity to commit the assault. ECF 10-1, at 51–52. Keesee again recounted that her husband texted Glackin in an accusatory manner and that the two men got into a verbal altercation over the phone. *Id*. at 52. Parks did not try to admit the second Keesee interview into evidence. ECF 10-8, at 24.

During cross-examination, Parks asked Keesee if she remembered "the names of the other males whose photos [she] showed to [the victim]." *Id*. at 22. Keesee listed four men, including Glackin. *Id*. at 22–23.

On May 13, 2019, the jury returned a guilty verdict on the charge of second-degree rape. ECF 10-11, at 20–22.

After trial, Parks obtained counsel, and on May 22, 2019, Parks, through counsel, filed a motion for a new trial, ECF 10-1, at 82–84, which was denied on August 1, 2019, ECF 10-12, at 17. Also on August 1, 2019, the court sentenced Parks to 20 years' incarceration, all but 8 years suspended, and a period of 5 years' supervised probation following his release from prison. ECF 10-1, at 11–12; ECF 10-12, at 1, 17–36. Parks was required to register as a sex offender. *Id.*

Parks timely filed a direct appeal with the Appellate Court of Maryland, which affirmed his conviction on September 9, 2020. ECF 10-1, at 11, 122–23. The mandate issued on October 13, 2020. *Id*. at 126. Parks did not seek certiorari review with the Supreme Court of Maryland. ECF 6, at 2.

More than a year later, on October 29, 2021, Parks, without counsel, filed a petition for post-conviction relief in state court. ECF 10-1, at 10. Then, through counsel, Parks filed an amended petition for post-conviction relief on March 2, 2023. ECF 10-1, at 136–52.

Also on March 2, 2023, Parks, through counsel, filed a motion for a new trial pursuant to Md. Code. Ann., Crim. Proc. § 8-201(c), because the jury's verdict was based on "unreliable DNA evidence." ECF 10-1, at 153–73. It appears Parks then moved to withdraw the motion for a new trial, and the court granted the motion in February 2024. *See* https://mdecportal.courts.state.md.us/ (last visited Feb. 27, 2026).

On May 4, 2023, Parks filed a request for mandamus relief in this Court. ECF 1. Parks's request for mandamus relief was denied, and he was advised that if he wanted to challenge his state criminal conviction, he could file a petition for writ of habeas corpus. ECF 5. He then filed the pending habeas petition. ECF 6.

In his petition, Parks asserts ineffective assistance of counsel claims against his post-conviction counsel and several other claims. Parks alleges that his post-conviction counsel "submitted court documents without [Parks's] consent or knowledge that he was [Parks's] assigned att[orne]y" and later "admitted to denying [Parks] due process." *Id.* at 10. And Parks alleges his post-conviction attorney (and the Office of the Public Defender generally) was "feckless." *Id*. at 18. Additionally, he claims his speedy trial rights were violated, *id.* at 8–9; he was denied due process, *id.* at 10–11; and the prosecutor concealed exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), ECF 6, at 12–14. Specifically, Parks alleges he was denied due process when it took 72 days for the State to produce "censored discovery"; the prosecutor did not return his phone calls regarding discovery; he was not informed about the court's rulings on motions he filed; the trial court mislabeled some of his filings; the trial court held a hearing on the State's motion in limine when he was not present; the trial court refused to hold a hearing on his motions; the trial court "refused to protect [his] sons from their verbal[ly] & physically abusive mother"; and the State's Attorney's Office "suborned perjury" from his ex-wife

who was called as a "surprise witness." *Id*. at 10–11. As for concealed exculpatory evidence, Parks alleges there are missing interviews from Keesee's husband and Joe Glackin, which Parks asserts are the "foundation" of his *Brady* claim; "specific pages were missing" from the Sexual Assault Forensic Examination (SAFE) report provided in discovery; a third voice message he left for Detective Seth Culver was not included in discovery; Culver falsified reports and interviews; and a fourth interview with the victim, which was not presented during trial but which was given to the jury, was "missing from discovery." *Id.* at 12–14.

## II.    Claims Regarding Post-Conviction Counsel

Parks claims that his post-conviction counsel rendered ineffective assistance. These claims are not grounds for federal habeas relief.

The Court may grant a petition for a writ of habeas corpus to remedy violations of the United States Constitution or laws of the United States.  28 U.S.C. § 2254(a); *see Wilson v. Corcoran*, 562 U.S. 1, 1 (2010). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Larry v. Branker*, 552 F.3d 356, 368 (4th Cir. 2009).  " In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.* (quoting *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991)). Absent the violation of a constitutional right or federal law, a federal habeas petitioner does not state a cognizable claim for relief. *Wilson v. Corcoran*, 562 U.S. 1, 1 (2011) (holding "federal courts may not issue writs of habeas corpus to prisoners whose confinement does not violate federal law").

 Parks's ineffective assistance of post-conviction counsel claims are not cognizable on federal habeas review because there is no constitutional right to state court post-conviction relief. "States have no obligation to provide this avenue of relief, and when they do, the fundamental

fairness mandated by the Due Process Clause does not require that the state supply a lawyer as well." *Murray v. Giarratano*, 492 U.S. 1, 8, (1989) (quoting *Pennsylvania v. Finley*, 481 U.S. 551, 557 (1987) (internal citation omitted)); *see Mackall v. Angelone*, 131 F.3d 442, 447 (4th Cir. 1997) (quoting Murray). When, as here, a state allows post-conviction proceedings, there is no right to counsel in those proceedings. *See Murray*, 492 U.S. at 8. Consequently, any errors by state post-conviction counsel cannot serve as a basis for federal habeas corpus relief. *Bryant v. Maryland*, 848 F.2d 492, 493 (4th Cir. 1988). Parks's ineffective assistance of post-conviction counsel claims must be dismissed.

## III.   Timeliness

A one-year limitations period applies to petitions filed pursuant to 28 U.S.C. § 2254. 28 U.S.C. § 2244(d)(1). The one-year period begins on the latest of four dates:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

*See id.* The habeas statute provides that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2). In other words, the federal filing clock is paused during the pursuit of state post-conviction relief, provided the application for state post-conviction relief was properly filed before

the expiration of the one-year limitations period. When, as here, claims presented in a single petition may have ripened on different dates, the statute of limitations is analyzed as to each claim. *Zach v. Tucker*, 704 F. 3d. 917, 918 (11th Cir. 2013) (en banc).

The parties disagree about when the one-year limitations period began. The respondent contends that § 2244(d)(1)(A) applies, that the one-year limitations period began on October 28, 2020 (the date on which the state court judgment became final), and that Parks's habeas petition must have been filed by October 28, 2021. For his part, Parks insists that § 2244(d)(1)(D) applies because he first discovered the factual predicates for his claims when he reviewed the court's docket and exhibits, which Parks claims occurred after the state court judgment became final. The respondent is correct, and Parks is incorrect. Parks knew the factual predicates for his myriad habeas claims before his trial concluded.

Parks knew, or should have known, the grounds for his alleged speedy trial right violation before trial began. Parks also knew or should have known, before and certainly during trial, the factual grounds for his claims that he was denied due process when it took 72 days for the State to produce "censored discovery"; that the prosecutor did not return his phone calls regarding discovery; that the court did not inform him about the rulings on his motions; that the trial court mislabeled some of his filings; that the trial court held a hearing on the State's motion in limine when he was not present; that the trial court refused to hold a hearing on his motions; that the trial court "refused to protect [his] sons from their verbal[ly] & physically abusive mother"; and that the State's Attorney's Office suborned perjury from his ex-wife who was called as a witness. ECF 6, at 10–11. All of those events occurred before or during trial, and Parks knew, or should have known, about them then. In addition, Parks knew or should have known during trial the factual predicate for his claim that the prosecutor failed to turn over one or more pages of the SAFE report

that was entered into evidence at trial. If pages from the report were missing from the version of the SAFE report produced to Parks in discovery, Parks could have discovered the missing pages during trial by comparing the version of the report in his possession with the report admitted into evidence. The factual predicate for Parks's alleged *Brady* claim that the State did not turn over a voicemail message that he left for a prosecutor was clearly known to Parks before trial because Parks was the person who left the message. The factual predicate for Parks's claim that the State submitted a falsified transcript of a witness interview conducted by Detective Culver also was known to Parks during trial. The audio of the witness interview was produced to Parks in discovery, and through the exercise of due diligence, Parks could have discovered any discrepancies between the audio and the transcript before or during trial.

For three of Parks's claims, the Court cannot determine the date on which Parks says the factual predicates could have been discovered through the exercise of due diligence. As for Parks's *Brady* claim that the State failed to turn over interviews with Keesee's husband and Glackin, Parks does not identify when he first learned about these interviews. As for Parks's claim that Detective Culver "falsified the arresting documents," ECF 6, at 13, Parks does not state when he first discovered the alleged falsification of documents. Finally, as for Parks's *Brady* claim that the State failed to disclose a fourth interview with the victim, Parks does not state when he first learned about the undisclosed interview. Because Parks does not provide information from which the Court could determine the date on which the factual predicates for these claims could have been discovered through the exercise of due diligence, the Court cannot delay the filing clock for these claims under § 2244(d)(1)(D).

The Court finds that Parks knew or should have known the factual predicates for his habeas claims before or during his trial. The clock for filing his habeas petition is not delayed under

§ 2244(d)(1)(D). Pursuant to § 2244(d)(1)(A), the clock began to run on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review[.]" 28 U.S.C. § 2244(d)(1)(A); *see Hill v. Braxton*, 277 F.3d 701, 704 (4th Cir. 2002) (noting the first date applies "unless one of the circumstances enumerated by the statute is present and starts the clock running at a later date"). The Appellate Court of Maryland affirmed Parks's conviction on September 9, 2020, and its mandate issued on October 13, 2020. Parks had 15 days from October 13, 2020 to seek certiorari with the Supreme Court of Maryland, which he did not do. *See* Md. R. 8-302(a); *Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012) (holding that when a petitioner does not pursue certiorari with the United States Supreme Court, the judgment becomes final when the time for pursuing direct review with the Supreme Court, or in state court, expires). The 15-day period expired on October 28, 2020. Parks's conviction became final on that date, and the one-year clock for filing a federal habeas petition began to tick on that date.

Parks's state post-conviction petition did not pause the clock because Parks did not file the petition during the one-year limitations period under § 2244(d)(1). *See* 28 U.S.C. § 2244(d)(2). That period closed on October 28, 2021, yet Parks did not file his post-conviction petition until October 29, 2021,[1] one year and one day after his conviction became final and one day after the

---

[1] The filing date of the post-conviction petition is determined by Md. Rule 1-322, which provides that a pleading is "deemed filed on the earliest of (1) the filing date noted by a judge on the item, (2) the date noted by the clerk on the item; or (3) the date established under section (d) of [the] Rule [setting forth Maryland's prison mailbox rule]." The Clerk of the Circuit Court for Harford County date stamped Parks's petition "October 29, 2021" and recorded the petition as filed on that same date. ECF 10-1, at 10, 127. Therefore, the filing date is October 29, 2021.

Even if Maryland's prison mailbox rule applied, Parks would not benefit from it. A "post-conviction petition by an unrepresented prisoner is deemed to be 'filed' at the moment the petition is formally submitted to prison authorities for forwarding to the circuit court." *Hackney v. State*, 184 A.3d 414, 425 (Md. 2018); *see* Md. Rule 1-322(d) (codifying the rule in *Hackney*). Here, the postmark and return address on the envelope containing the petition for post-conviction relief and the certified mail tracking history demonstrate that the petition was mailed from Pfendler, 114

9

deadline for filing a habeas petition. Accordingly, the filing of the post-conviction petition and the post-conviction proceedings did not toll the one-year filing deadline under § 2244(d)(2).

Parks suggests the limitations period may be subject to equitable tolling. The limitations period may be subject to equitable tolling "in those 'rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation against the party and gross injustice would result.'" *Whiteside v. United States*, 775 F.3d 180, 184 (4th Cir. 2014) (quoting *Rouse v. Lee*, 339 F.3d 238 (4th Cir. 2003) (quoting *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000))). To equitably toll the limitations period, the habeas petitioner must demonstrate "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Id.* (quoting *Holland v. Florida*, 560 U.S. 631, 649 (2010)). "The diligence required for equitable tolling purposes is reasonable diligence, not maximum feasible diligence." *Holland*, 560 U.S. at 653 (internal citations and quotation marks omitted). Extraordinary circumstances may involve "wrongful conduct" on the part of the government or other circumstances beyond the petitioner's control. *Harris*, 209 F.3d at 330 (quoting *Alvarez-Machain v. United States*, 107 F.3d 696, 700 (9th Cir. 1996)).

Parks offers three possible grounds for tolling. First, Parks asserts "the extraordinary circumstance is the COVID-19 pandemic," insisting that "[i]t is a matter of public record that all aspects of court processes were indefinitely suspended." ECF 13, at 5. But, between October 28, 2020 and October 28, 2021, when Parks's federal habeas petition should have been filed, this Court

---

Riverbluff Road, Littleton, NC 27850, not Parks's place of confinement in Maryland. ECF 10-1, at 134, 216–17. Therefore, Parks cannot use the prison mailbox rule to establish an earlier filing date for his petition. *See Hernandez v. Spearman*, 764 F.3d 1071, 1074 (9th Cir. 2014) ("Courts have refused . . . to apply the prison mailbox rule to cases in which . . . a prisoner gives a petition to a third party who is not confined in prison for filing through regular channels." (citing *Cook v. Segall*, 295 F. 3d 517, 521(6th Cir. 2002) (collecting cases))). Parks's state post-conviction petition is deemed filed on the date the clerk received and stamped the petition.

was accepting filings. Additionally, the state court docket reflects receipt of the record and exhibits from the Appellate Court of Maryland on September 20, 2021 and October 18, 2021, showing that the state court, too, was accepting filings and Parks could have filed his state post-conviction petition, which would have tolled the limitations period for his federal filing. ECF 10-1, at 10. Yet Parks did not file his state post-conviction petition until October 29, 2021 and he did not file his federal habeas petition until May 4 2023.[2] The pandemic did not prevent Parks from timely filing his federal habeas petition or his state post-conviction. Second, Parks blames his post-conviction lawyers for filing delays. ECF 14; *see* ECF 6, at 5. But those purported filing delays do not explain the year-and-a-day delay between the conclusion of his direct appeal and the filing of his state post-conviction petition, which he filed without the assistance of post-conviction counsel. Nor do they explain his year-and-a-half delay in filing for federal habeas relief. Third, Parks blames the Circuit Court for Harford County, citing "Slow attrition in Exposing Malfeasance & Ethic Violations of the Circuit Court of Harf. Co. MD" as the reason "why the one-year statute of limitations as contained in 28 U.S.C. § 2244(d) does not bar [his] claim." ECF 6, at 5. But the Circuit Court for Harford County, which was accepting filings during the time a state post-conviction petition could have tolled Parks's deadline for filing for federal habeas relief, could not possibly have caused him to delay filing his post-conviction petition or to miss the federal habeas filing deadline. No extraordinary circumstances prevented Parks from filing a petition for post-conviction relief between October 28, 2020 and October 28, 2021, which would have tolled the one-year limitations period. Likewise, no extraordinary circumstances prevented Parks from filing a federal habeas petition by October 28, 2021. Parks did not act diligently in pursuing his post-

---

[2] The Court considers Parks's habeas petition as filed on May 4, 2023, the date he filed for mandamus relief.

conviction state remedies or this habeas petition. And Parks has not shown that a miscarriage of justice would result if the Court does not reach the merits of his petition.

Equitable tolling does not apply. Parks filed his federal habeas petition too late.

### IV.      Certificate of Appealability

When a district court dismisses a habeas petition solely on procedural grounds, a certificate of appealability will not issue unless the petitioner can demonstrate both "(1) 'that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right' and (2) 'that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" *Rose v. Lee*, 252 F.3d 676, 684 (4th Cir. 2001) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Parks has not demonstrated either ground for a certificate of appealability. Parks may request that the United States Court of Appeals for the Fourth Circuit issue such a certificate. *See Lyons v. Lee*, 316 F.3d 528, 532 (4th Cir. 2003) (considering whether to grant a certificate of appealability after the district court declined to issue one).

A separate order dismissing the petition and denying a certificate of appealability follows.[3]


March 25, 2026                                          _____
Date                                                          Deborah L. Boardman
                                                                 United States District Judge

---

[3] Parks's motion to compel a ruling in this case, ECF 24, is moot.